# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | |
|---|---|
| **TREY L. MILLER** | **CASE NO. 2:17-CV-01063** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **LENARD ENTERPRISES, LLC** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 25] filed by plaintiff Trey L. Miller. The motion relates to Miller's Fair Labor Standards Act ("FLSA") suit for overtime compensation against his former employer, Lenard Enterprises, LLC ("Lenard"). The motion is regarded as unopposed.

### I.
### BACKGROUND

Lenard Enterprises, LLC, d/b/a Ready Decks of Lake Charles, operates as a franchisee of Ready Decks, Inc. and provides site-built decks and porches to customers in Louisiana and Texas. Doc. 25, att. 4, ¶ 2; doc. 25, att. 11. The company hired Miller as a carpenter/helper in March 2015, at a compensation rate of $500.00/week. Doc. 25, att. 4, ¶¶ 15–16. In that position Miller spent most of his time doing manual labor. *Id.* at ¶ 21. He received raises to $600.00 and then $700.00/week in May and June 2015, respectively. *Id.* at ¶¶ 23–24; *see* doc. 25, att. 10, pp. 9–10. After about one year of employment with Lenard he was promoted to lead carpenter/supervisor and received a raise to $750.00/week, though

he maintains that his daily activities remained "nearly identical" and that most of his duties involved building and installation. *Id.* at ¶ 25; doc. 25, att. 3, pp. 10–11.

Miller's records show that he regularly worked more than 40 hours per week for Lenard. *See* doc. 25, atts. 6, 10. Payroll records also reflect that Miller was compensated weekly, based on a 40-hour work week, throughout his employment with Lenard, with no overtime payments and with occasional and substantial deductions from his regular salary. Doc. 25, att. 10. He was terminated in May 2017, after complaining about his pay and his lack of overtime compensation. Doc. 25, att. 4, ¶ 42. At that time his rate of pay was $850.00/week. *Id.* Miller filed suit in this court on August 23, 2017, alleging that he was a non-exempt employee and was owed overtime compensation under the FLSA. Doc. 1. He also maintains that he is entitled to damages under the three-year statute of limitations applicable to willful FLSA violations. *Id.* He now moves for summary judgment on his claim. Doc. 25. Lenard is no longer represented in this matter and has not filed a response or request for extension within the allotted time. Accordingly, the motion is regarded as unopposed.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by

pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). When the motion is unopposed, the moving party retains its burden of showing that there is no genuine issue of material fact. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995). Under the court's local rules, however, failure to file an opposition means that the moving party's statement of uncontested material facts is deemed admitted. Local Rule 56.2.

# III.
# LAW & APPLICATION

Miller asserts that he is entitled to unpaid overtime compensation under the FLSA and that he does not fit within any exemption to that statute's overtime requirements. The court thus analyzes the record in order to determine, under the standards described above, whether (1) Miller can make out a prima facie case for unpaid overtime compensation and (2) whether any exemption might bar his claim. If Miller shows an entitlement to judgment as a matter of law on his claims, the court then looks to the amount and categories of damages requested.

## A. *Prima Facie Case*

The FLSA was enacted in 1938 "as a means of regulating minimum wages, maximum working hours, and child labor in industries that affected interstate commerce." *Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018, 1024 (5th Cir. 1993). Its central themes are minimum wage and overtime requirements. *E.g.*, *Hesseltine v. Goodyear Tire & Rubber Co.*, 391 F.Supp.2d 509, 515–16 (E.D. Tex. 2005). Under the latter, the FLSA "requires any employee working over 40 hours in a week to be paid overtime, premium compensation at the rate of one and one-half times their 'regular rate' of pay." *York v. City of Wichita Falls*, 48 F.3d 919, 921 (5th Cir. 1995); *see* 29 U.S.C. § 207.

To set forth a prima facie case of a FLSA overtime wage violation, a plaintiff must show by a preponderance of the evidence: (1) that an employer-employee relationship existed during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's

overtime wage requirements; and (4) the amount of overtime compensation due. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019). Once the plaintiff makes this showing, "the burden shifts to the employer come forward with evidence of the precise amount of work performed or with evidence to [negate] the reasonableness of the inference to be drawn from the employee's evidence." *Harvill v. Westward Comms., LLC*, 433 F.3d 428, 441 (5th Cir. 2005) (quoting *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)). "If the employer fails to produce such evidence, the court may then award damages to the employee even though the result may only be approximate." *Id.*

### 1. *Employment status*

Miller claims unpaid overtime wages for March 2015 until his termination in May 2017. He supports his claim of employment with payroll documents and his W-2, and Lenard has also admitted that he was an employee of the company during that time. *See* doc. 25, atts. 7, 9, 10. The first factor is therefore satisfied.

### 2. *FLSA applicability*

Under the second factor, the FLSA's overtime protections apply to employees engaged in the production of goods for commerce (individual coverage) or employed in an enterprise engaged in commerce or in the production of goods for commerce. *Carmack v. Park Cities Healthcare, LLC*, 321 F.Supp.3d 689, 698 (N.D. Tex. Jul. 25, 2018). "Either individual or enterprise coverage is sufficient to invoke FLSA protection." *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992). Under the FLSA, "commerce" is defined as "trade, commerce, transportation, transmission, or communication among the several States, or between any State and any place outside thereof" and an employee is "engaged

in the production of goods" when he is "employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State." 29 U.S.C. §§ 203(b), (j). Miller shows that his job duties included the construction of decks for the defendant in Louisiana and Texas. *See*, e.g., doc. 25, att. 8 (Lenard job calendar). Accordingly, he satisfies the requirements for both individual and enterprise coverage under the FLSA.

### *3. Existence and extent of violation*

Under the third and fourth factors, Miller's payroll exhibits only reflect 40-hour work weeks. Doc. 25, att. 10. He admits that he did not submit timesheets to Lenard during his employment but maintains that Lenard was aware of his extended hours. Doc. 25, att. 4, ¶ 48.

The FLSA requires that an employee prove "with definite and certain evidence" that he performed work for which he was not properly compensated. *Reeves v. Internat'l Telephone & Telegraph Co.*, 616 F.2d 1342, 1351 (5th Cir. 1980). If the employer's records are inaccurate or incomplete, the employee carries this burden by showing that he has "performed work for which he was improperly compensated and [producing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *In re Williams*, 298 F.3d 458, 463 (5th Cir. 2002). The burden then shifts to the employer to produce evidence of the precise amount of work performed or evidence negating the reasonableness of any inference to be drawn from the employee's evidence. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946) (superseded on other

grounds by statute). If the employer fails to meet his burden, "the court may then award damages to the employee, even though the results be only approximate." *Id.* at 688. In other words, a plaintiff need not prove his uncompensated overtime hours "with unerring accuracy or certainty." *Prince v. MND Hospitality, Inc.*, 2009 WL 2170042, at *6 (S.D. Tex. Jul. 20, 2009). "If the defendant fails to rebut the plaintiff's evidence, the plaintiff's recollection and estimates of hours are presumed to be correct." *Nieddu v. Lifetime Fitness, Inc.*, 38 F.Supp.3d 849, 856–57 (S.D. Tex. 2014) (citing *Mt. Clemens Pottery Co.*, 328 U.S. at 687–88).

Miller avers that he tracked his hours worked on a personal calendar throughout his employment and that this calendar "represents [a] true and good faith approximation of the number of hours [he] worked for Lenard." Doc. 25, att. 4, ¶ 48; *see* doc. 25, att. 6 (copy of calendar). Miller's personal calendar shows several weeks in which he recorded working over 40 hours yet received compensation at only his regular rate as described above. Miller also declares that he complained to his employer in April 2016, July 2016, and May 2017 about working in excess of 40 hours a week without overtime pay. Doc. 25, att. 4, ¶¶ 25, 26, 42.

Former office manager Melissa Bourgeois affirms that Lenard did not track the hours that its employees worked. Doc. 25, att. 17, ¶ 19. She provides:

> At all times, Trey Miller was required to report to [Lenard's] office at approximately 7:00 a.m. in the morning, at which time he had to pick up the company truck and trailer. Mr. Miller was expected to work from 7:00 a.m. until whatever job he was assigned to for the day was completed. Generally, this required him to work at least twelve (12) hours per day. Oftentimes, he did not get back to the Sulphur office to drop the truck and trailer off until midnight, if not later.

*Id.* at ¶ 15. Finally, she provides that she reviewed Miller's calendar recording his hours worked and "absolutely agree[s] that these . . . entries are a true reflection of the amount of hours Mr. Miller worked." *Id.* at ¶ 19. Lenard has submitted no contrary evidence.

Miller's evidence shows that he worked at least on occasion more than 40 hours a week while only being compensated for a 40-hour work week. Assuming that no exemption applies, *infra*, he has shown the existence of a FLSA violation as a matter of just and reasonable inference. Given the lack of challenge to his records and the corroborating testimony from Ms. Bourgeois, he has also provided adequate support for the number of uncompensated hours. Accordingly, Miller's time records will be used as the basis for any damages calculations made.

### B. *Exemptions*

The overtime requirements do not apply to all employees, however, and instead admit several exemptions. The employer has the burden to prove that an employee is exempt under the FLSA, and exemptions are construed narrowly against the employer. *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 402 (5th Cir. 2002). The employee's status is determined based on whether his salary and duties meet the requirements of the appropriate federal regulations. 29 C.F.R. § 541.2.

#### 1. *Administrative/executive exception*

Lenard asserted that Miller was not entitled to overtime compensation because he was employed in a management or supervisory capacity. Doc. 5, p. 4. Individuals "employed in a bona fide executive, administrative, or professional capacity" are

completely exempt from overtime compensation. 29 U.S.C. § 213(a)(1). Both executive and administrative employees are ones who are compensated on a salary basis, at rates set out under the federal regulations, and who have certain duties as laid out in those regulations. 29 C.F.R. §§ 541.100, 541.200. Miller argues that he does not qualify for either exemption because his salary was subject to certain deductions and because his job duties did not fit within the regulations' framework either before or after his promotion to lead carpenter.

### a. Salary basis

The salary basis test "is meant 'to distinguish true executive, administrative, or professional employees from non-exempt employees, *i.e.*, employees who may be disciplined by piecemeal deductions from pay." *Kulish v. Rite Aid Corp.*, 2012 WL 6532414, at *7 (D. Md. Dec. 13, 2012) (quoting *Yourman v. Giuliani*, 229 F.3d 124, 130 (2d Cir. 2000)) (cleaned up). "The salary requirement is premised on the notion that such employees have discretion to manage their time and are not paid by the hour or task, but for the general value of services performed." *Id.* (internal quotations omitted). An employee is paid on a salary basis if he receives a predetermined amount on a weekly or less frequent basis, and this amount is not subject to reduction based on the quality or quantity of work performed. 29 C.F.R. § 541.118(a). An employee is not considered salaried, however, "if deductions from [his] predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business." 29 C.F.R. § 541.602(a)(2).

An employer who makes improper deductions from an employee's salary loses his ability to claim the exemption, if the facts demonstrate that the employer did not intend to pay the employee on a salary basis. 29 C.F.R. § 541.603(a). "An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis." *Id.* In determining whether an "actual practice" exists, the court considers factors such as the number and timing of deductions, the number of employees whose salary was reduced, and whether the employer had a clearly communicated policy regarding these deductions. *Id.* A one-time improper deduction, without more, is insufficient to show that such a practice existed. *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1196 (10th Cir. 2015); *see also Hansberger v. L'Italia Restaurant, LLC*, 2017 WL 3923979 (W.D. Va. Sep. 7, 2017).

Miller argues that he cannot be considered a salaried employee because Lenard docked his pay when he missed work due to inclement weather or the lack of job assignments. In his affidavit he provides:

> While I originally understood my compensation arrangement to be on a "salary basis," I learned that such was not the case whenever I missed a day of work or otherwise worked less than forty (40) hours per week. If I missed a day of work, Lenard docked my pay. This is reflected in my payroll records. On a couple of occasions, Lenard did pay the full amount even if the employees had a day off; however, far more times than not, my pay was docked. A day off would occur if no job was scheduled or if there was a terrible storm that entirely precluded any work whatsoever.

Doc. 25, att. 4, ¶ 17. The payroll records do not reflect the reason for each deduction. They do, however, show at least six occasions in Miller's two years of employment where twenty percent of his pay was docked, ostensibly reflecting one missed day of work per pay period.

*See* doc. 25, att. 10. No other explanation is provided for these deductions, or for the days off outside of the availability of work. Though there is no evidence relating to Lenard's practices with respect to other workers or whether it communicated this policy to anyone other than Miller, the frequency with which it apparently applied these consequences to Miller suffices to show an actual practice of improper deductions. Accordingly, the company is not entitled to claim an exemption based on Miller's status as a salaried employee.

### b. *Executive/administrative duties*

Even if Miller qualified as a salaried employee, he would only be exempt from FLSA's overtime provisions if he were also shown to be one working in an administrative or executive capacity. An executive employee is one who (1) is compensated on a salary basis at or above a certain rate set under the regulations; (2) has as his primary duty the management of the enterprise in which he is employed, or a recognized department or subdivision thereof; (3) customarily and regularly directs the work of two or more employees; and (4) has the authority to hire or fire other employees, or one whose suggestions as to other employees are given particular weight. 29 C.F.R. § 541.100. An administrative employee is one (1) who is compensated on a salary basis at or above a certain rate set under the regulations; (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty include the exercise of discretion and independent judgment with respect to matters of significance. *Id.* at § 541.200(a).

Miller states that his primary duty while working at Lenard was the construction of decks and porches. *See* doc. 25, att. 4. During the first year of his employment, while he was classified as a "carpenter/helper," he "spent the entirety of [his] workday performing manual, non-managerial tasks." *Id.* at ¶¶ 21–22. After his promotion to "lead carpenter/supervisor," he acquired additional responsibilities such as collecting money from customers upon completion of a job and creating a materials list in preparation for an upcoming job. *Id.* at ¶ 27. He would also supervise one, and sometimes two or more, other employee(s) on a job. *Id.* at ¶ 28. In this role, however, he maintains that approximately ninety percent of his work was "non-supervisory, physical construction work, identical to the work that [he] performed as a Carpenter/Helper" and that he was still required to consult with his supervisor, Jody Lenard, before making any significant decisions regarding business operations. *Id.* at ¶¶ 30–37.

Based on the foregoing and irrespective of his salary status, Miller would not satisfy either the administrative or executive exception. He did not have as his primary duty the management of the enterprise or its employees, and his primary duty was not the performance of non-manual work. Instead, he remained a laborer first and foremost with incidental administrative and executive responsibilities.

### 2. *Fluctuating work week*

As one of its defenses Lenard asserts that Miller was compensated on a "fluctuating work week" basis. Doc. 5, p. 4. This method of payment is an arrangement under which the employee receives "a fixed weekly pay for a fluctuating work schedule with a varying number of hours worked each week" and acts as an alternative to the requirement of

overtime compensation. *Black v. SettlePou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013). This method may only be applied where the employee "clearly understands" that his salary "is intended to compensate any *unlimited* amount of hours [he] might be expected to work in a given week . . . ." *Hills v. Entergy Operations, Inc.*, 866 F.3d 610, 616 (5th Cir. 2017) (citing 29 C.F.R. § 778.114) (emphasis in original). Employees must prove noncompliance with at least one of the following prerequisites in order to defeat a claim of payment under a fluctuating work week method: (1) the employee's hours fluctuate from week to week; (2) the employee receives a fixed salary that does not vary with the number of hours worked during the week (excluding overtime premiums); (3) the fixed amount provides compensation every week at a regular rate at least equal to the minimum wage; and (4) the employer and employee share a clear mutual understanding that the employer will pay the fixed salary regardless of the number of hours worked.

As shown above, Lenard made deductions from Miller's agreed rate of pay on several occasions when he worked fewer than 40 hours per week. There is no evidence that it ever offset these deductions by overcompensating Miller on the numerous times he exceeded a 40-hour work week. Accordingly, neither the second nor fourth prerequisite is satisfied and Lenard was not exempt from overtime requirements on the basis of a fluctuating work week payment schedule.

### C. Calculation of Damages

Finally, the court must determine the amount of damages owed by determining (1) the appropriate statute of limitations, (2) the rate at which Miller's unpaid wages should be

calculated, (3) Miller's entitlement to liquidated damages, and (4) Miller's claim for attorney fees.

### 1. *Statute of limitations*

While FLSA claims are generally subject to a two-year statute of limitations, the statute permits a three-year window if the plaintiff can show that the employer's violation was willful. 29 U.S.C. § 255(a); *see, e.g.*, *Mohammadi v. Nwabuisi*, 605 F. App'x 329, 332 (5th Cir. 2015). A violation is willful if the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* "Mere knowledge of the FLSA and its potential applicability does not suffice, nor does conduct that is merely negligent or unreasonable." *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 360 (5th Cir. 2015). Courts have found the following evidence indicative of willfulness: (1) admissions that the employer knew its payment method violated FLSA prior to the accrual of the action; (2) continuation of a pay practice without further investigation after being put on notice that the practice violated the FLSA; (3) failure to keep accurate or complete records of employment; and (5) prior internal investigations revealing similar violations. *Bingham v. Jefferson Cnty., Tex.*, 2013 WL 1312563, at *14 (E.D. Tex. 2013). On the other hand, an employer who acts without a reasonable basis for believing that he is complying with the FLSA or who fails to seek legal advice on his payment practices is merely negligent. *Zannikos*, 605 F. App'x at 360.

Miller argues that he has established a willful violation based on his repeated complaints to his employer about his pay. He notes that he raised concerns "regarding underpayment and non-payment of overtime compensation" with Jody Lenard in April

2016, July 2016, and May 2017, and that he received raises after the first two complaints but was fired after the third. Doc. 25, att. 4, ¶¶ 25, 26, 42. These complaints and Lenard's responses are insufficient to show a willful FLSA violation – they do not establish that Lenard had sufficient facts to be aware of Miller's entitlement to overtime pay under federal law, especially since Miller was being compensated on what appeared to be a salary basis and there is no evidence regarding Lenard's existing familiarity with federal wage law. Additionally, Jody Lenard responded to Miller's concerns in the first two instances by substantially increasing his pay. Miller therefore fails to carry his burden of showing that the FLSA violation is willful, and so damages will only be calculated based on the two years preceding the filing of this complaint.

### 2. *Rate of pay*

As established above, Miller was entitled to pay at one and a half times his regular rate of pay for every hour worked in excess of 40 hours per week. An employee's regular rate of pay is the hourly rate he was actually paid for the normal, non-overtime work for which he is employed. *Aaron v. City of Wichita, Kan.*, 54 F.3d 652, 655 (10th Cir. 1995) (citing *149 Madison Ave. Corp. v. Asselta*, 331 U.S. 199, 203 (1947)). "If an employee is employed on a salary basis, his regular hourly rate is computed by dividing the salary by the number of hours for which the salary is intended to compensate." *Id.*; *see* 29 C.F.R. § 778.113(a).

Because Miller is only entitled to assert claims under the two-year statute of limitations, however, the court will calculate his overtime owed from August 23, 2015, onward. During this time, Miller was compensated at the following rates: (1) $700/week

($17.50/hour) until April 14, 2016, (2) $750/week ($18.75/hour) from April 15, 2016, to July 22, 2016, and (3) $850/week ($21.25/hour) from July 23, 2016, until his termination on May 16, 2017. *See* doc. 25, atts. 4, 10. Based on his uncontested records and the court's calculations[1], he has shown a right to the following overtime wages:

| Time Period | Overtime Wage | Overtime Hours | Overtime Owed |
| --- | --- | --- | --- |
| 8/23/2015 to 4/15/2016 | $26.25 | 424.5 | $11,143.125 |
| 4/15/2016 to 7/21/2016 | $28.125 | 288 | $8,100.00 |
| 7/22/2016 to 5/16/2017 | $31.875 | 872.5 | $27,810.9375 |
| **Total** | | | **$47,054.0625** |

Accordingly, Lenard is liable to Miller in this amount, rounded to the nearest cent, for its failure to pay him overtime wages during his employment in the two years preceding the filing of this complaint.

### 3. *Liquidated damages*

An employer who violates the overtime provisions of the FLSA is also liable for liquidated damages in equal amount to the unpaid overtime compensation, unless he can show that he acted in good faith and had reasonable grounds to believe that his payment practices complied with the FLSA. *Singer v. City of Waco, Tex.*, 324 F.3d 813, 822–23 (5th Cir. 2003). The employer has the "substantial burden" of showing that its actions met this requirement. *Steele v. Leasing Enterprises, Ltd.*, 826 F.3d 237, 246 (5th Cir. 2016).

Lenard asserts its alleged good faith as a defense but has come forth with no evidence to support same. A finding that the employer did not act willfully is insufficient to establish that it acted in good faith. *Clark v. Centene Co. of Texas, LP*, 104 F.Supp.3d

---

[1] Plaintiff has provided his own tables summarizing the data from his timesheets. From those tables, however, the undersigned notes a few discrepancies and observes that plaintiff has inconsistently rounded up based on half-hour or fewer increments worked. Accordingly, the court has re-calculated the overtime hours based on plaintiff's timesheets.

813, 834 (W.D. Tex. 2015). An employer may not rely on ignorance alone as reasonable grounds for believing that its actions did not violate the FLSA. *Owens v. Marstek, LLC*, 548 F. App'x 966, 972–73 (5th Cir. 2013) (citing *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468–69 (5th Cir. 1979)). Accordingly, the lack of evidence as to any direct notice of the violation does not suffice, nor does the court's inability to find that Lenard willfully violated the FLSA. Lenard fails to carry its substantial burden and owes to the plaintiff liquidated damages in an amount equal to the unpaid overtime wages.

### 4. *Attorney fees*

Finally, Miller makes a claim for costs and attorney fees. The FLSA provides that the court "shall, in addition to any judgment awarded to the plaintiff . . . , allow a **reasonable** attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added). Courts in this circuit use the lodestar method to calculate such an award, multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate based on the market for that work in the community. *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). The court may then enhance or decrease the award based on other factors, as described in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Black*, 732 F.3d at 502.

Miller supports his claim with an invoice from plaintiff's counsel. The invoice shows that Miller incurred $23,506.67 in charges from that firm as of the date this motion was filed. *See* doc. 25, att. 16. The charges include work charged by lead counsel at a rate of $350/hour, though counsel has been licensed for fewer than ten years, and by "DH" and

"KK" at rates of $250/hour.[2] There is no evidence on any of these individuals' qualifications or customary rates, the market rates for such services in this community, or the reasonableness of the hours expended in this matter. Accordingly, the court declines to adopt the fees quoted from the invoice and instead requires additional briefing in order to determine the amount of costs and fees owed.

---

[2] DH's services were billed at $125–150/hour from the case's inception in June 2017 until January 2019, at $250/hour from January 2019 until August 21, 2019, and then at $150/hour for the remainder of the time covered in the invoice. *See* doc. 25, att. 16.

# IV.
## CONCLUSION

For the reasons stated above, the Motion for Summary Judgment will be granted based on a finding that Miller is entitled to judgment as a matter of law on his claims and damages as described above. The court requires additional evidence and briefing in order to determine the amount of attorney fees owed, however, and will grant the plaintiff an additional **14 days** to provide this information. Defendant will then have **7 days** to submit any response.

**THUS DONE AND SIGNED** in Chambers on this 13th day of November, 2019.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**